# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Parker School Uniforms, LLC,<br><br>                Debtors. | Chapter 7<br><br>Case No.: 18-10085-CSS |
| Jeoffrey L. Burtch, Chapter 7 Trustee,<br><br>                Plaintiff,<br><br>v.<br><br>Salem Investment Partners, III, LP and SIP III Holdings, Inc.<br><br>                Defendants. | Adv. Pro. No. 19-50770-CSS |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

| | |
|---|---|
| **THE ROSNER LAW GROUP LLC**<br>Frederick B. Rosner (DE 3995)<br>Jason A. Gibson (DE 6091)<br>Zhao (Ruby) Liu (DE 6436)<br>824 N. Market Street, Suite 810<br>Wilmington, Delaware 19801<br>Tel: (302) 777-1111<br>Email:  rosner@teamrosner.com<br>            gibson@teamrosner.com<br>           liu@teamrosner.com<br><br>Dated: June 1, 2020<br>        Wilmington, Delaware | **BROOKS, PIERCE, MCLENDON,**<br>**HUMPHREY & LEONARD, LLP**<br>Jeffrey E. Oleynik, Esq.<br>2000 Renaissance Plaza,<br>230 North Elm Street<br>Greensboro, NC  27401<br>Tel: (336) 271-3182<br>Email: joleynik@brookspierce.com<br><br><br><br>*Attorneys for Defendants Salem Investment*<br>*Partners, III, L.P. and SIP III Holdings, Inc.* |

# TABLE OF CONTENTS

Statement of the Nature and Stage of Proceedings ........................................................... 1
Summary of the Argument .................................................................................................. 1
Statement of Facts ................................................................................................................ 2
Standard of Review .............................................................................................................. 4
Argument ............................................................................................................................... 5
    I.    The federal preference claim (Count I) should be dismissed because the complaint does not take into account Salem's obvious new value defense. ............................................. 5
    II.    The federal fraudulent transfer claim (Count II) should be dismissed because Parker received reasonably equivalent value in the form of debt reduction. ........................... 8
    III.    The state law claims (Counts III-V and VIII) should be dismissed for the same reasons as the federal law claims, and because the Trustee has not identified an actual creditor holding an unsecured claim who could have avoided the transactions. ..................... 9
    IV.    The recharacterization claim (Count VII) should be dismissed because the Trustee has not alleged facts showing that the challenged notes were anything other than *bona fide* loans from an existing lender. ........................................................................ 11
    V.    The remaining claims (Counts VI and IX) are not independent causes of action. ....... 15
Conclusion ........................................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

Cases

*Adkins v. Rumsfeld*,
  389 F. Supp. 2d 579 (D. Del. 2005) .................................................................................... 3
*ALA, Inc. v. CCAIR, Inc.*,
  29 F.3 855, 859 (3d Cir. 1994) ............................................................................................ 5
*Bradley v. School Board of City of Richmond*,
  416 U.S. 696 (1974) ............................................................................................................. 7
*French v. Grove Manufacturing Co.*,
  656 F.2d 295, 298 (8th Cir. 1981) ...................................................................................... 7
*George v. Rehiel*,
  738 F.3d 562 (3d Cir. 2013) .............................................................................................. 14
*Guzman v. Attorney General*,
  770 F.3d 1077 (3d Cir. 2014) ......................................................................................... 7, 8
*Image Masters, Inc. v. Chase Home Finance*,
  489 B.R. 375 (E.D. Pa. 2013) ............................................................................................. 9
*In re Agriprocessors, Inc.*,
  490 B.R. 374 (Bankr. N.D. Iowa 2013) ............................................................................. 8
*In re APF Co.*,
  308 B.R. 183 (Bankr. D. Del. 2004) ................................................................................... 9
*In re Autobacs Strauss, Inc*,
  473 B.R. 525 (Bankr. D. Del. 2012) ................................................................................... 5
*In re AutoStyle Plastics, Inc.*,
  269 F.3d 726 (6th Cir. 2001) ............................................................................................ 12
*In re Direct Response Media, Inc.*,
  466 B.R. 626 (Bankr. D. Del. 2012) ................................................................................... 8
*In re Friedman's Inc.*,
  452 B.R. 512 (Bankr. D. Del. 2011) ................................................................................. 12
*In re Gailey, Inc.*,
  119 B.R. 504, 510 (Bankr. W.D. Pa. 1990) ..................................................................... 14
*In re Global Telecom Corp.*,
  327 B.R. 711 (Bankr. D. Del. 2005) ........................................................................... 10, 11
*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) ........................................................................... 13, 15
*In re LMI Legacy Holdings, Inc.*,
  No. 13-12098, 2017 WL 1508606 (Bankr. D. Del. Apr. 27, 2017) ................................. 5
*In re LSC Wind Down LLC*,
  610 B.R. 779 (Bankr. D. Del. 2020) ................................................................................. 10
*In re Martin*,
  205 B.R. 646 (Bankr. M.D. Ala. 1993) .............................................................................. 9
*In re Moll Indus., Inc.*,
  454 B.R. 574 (Bankr. D. Del. 2011) ........................................................................... 13, 14
*In re Optim Energy, LLC*,
  527 B.R. 169 (D. Del. 2015) ............................................................................................. 14

*In re Optim Energy, LLC*,
  No. 14-10262, 2014 WL 1924908 (Bankr. D. Del. May 13, 2014) .................................. 11, 14
*In re Our Alchemy, LLC*,
  No. 16-11596, 2019 WL 4447535 (Bankr. D. Del. Sept. 16, 2019) ................................. 12, 15
*In re Petters Co., Inc.*,
  495 B.R. 887 (Bankr. D. Minn. 2013) ............................................................................... 10
*In re Raytrans Holding, Inc.*,
  573 B.R. 121 (Bankr. D. Del. 2017) .................................................................................. 15
*In re SubMicron Sys. Corp.*,
  291 B.R. 314 (D. Del. 2003) .............................................................................................. 13
*In re SubMicron Sys. Corp.*,
  432 F.3d 448 (3d Cir. 2006) ......................................................................................... 11, 13
*In re Tyrit Enterprises*,
  121 B.R. 217 (Bankr. S.D. Tex. 1990) .............................................................................. 10
*In re USDigital, Inc.*,
  443 B.R. 22 (Bankr. D. Del. 2011) .................................................................................... 14
*Pani v. Empire Blue Cross Blue Shield*,
  152 F.3d 67 (2d Cir. 1998) .................................................................................................. 5
*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010) .............................................................................................. 14
*Sender v. Simon*,
  84 F.3d 1299 (10th Cir. 1996) ........................................................................................... 10

Statutes

6 Del. C. § 1301 ........................................................................................................................ 11
6 Del. C. § 1304 ........................................................................................................................ 11
6 Del. C. § 1305 ........................................................................................................................ 11
11 U.S.C. § 101 ................................................................................................................... 5, 6, 7
11 U.S.C. § 502 ......................................................................................................................... 16
11 U.S.C. § 544 ............................................................................................................. 4, 10, 11
11 U.S.C. § 547 ....................................................................................................................... 5, 8
11 U.S.C. § 548 ....................................................................................................................... 8, 9
11 U.S.C. § 550 ......................................................................................................................... 16
N.C. Gen. Stat. § 39-23.1 ......................................................................................................... 11
N.C. Gen. Stat. § 39-23.4 ......................................................................................................... 11
N.C. Gen. Stat. § 39-23.5 ......................................................................................................... 11
Small Business Reorganization Act of 2019, Pub. L. No. 116-54 (2019) .................................. 6
Tex. Bus. & Com. § 24.002 ..................................................................................................... 11
Tex. Bus. & Com. § 24.005 ..................................................................................................... 12
Tex. Bus. & Com. § 24.006 ............................................................................................... 11, 12

Rules

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 4
Fed. R. Bankr. P. 7012 ............................................................................................................... 4

**STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS**

The Chapter 7 bankruptcy petition for Parker School Uniforms, LLC was filed on January 12, 2018. This adversary proceeding against Salem Investment Partners III, LP and SIP III Holdings, Inc. (collectively, "Salem") was commenced on November 7, 2019, along with 13 other adversarial proceedings commenced by the Trustee on or around the same date.[1] An Amended Complaint was filed by the Trustee on January 15, 2020. The time for Salem's reply to the Complaint was extended to June 1, 2020, and Salem is now moving to dismiss the Amended Complaint for failure to state a claim.

**SUMMARY OF THE ARGUMENT**

The Amended Complaint asserts insider preference and fraudulent transfer claims under federal and state law, and seeks to recharacterize two notes from debt to equity. These claims fail for the following reasons:

1. The federal insider preference claim (Count I) fails because Salem has an obvious new value defense that the Trustee failed to address in its complaint, in contravention of recent amendments to 11 U.S.C. § 547(b), which require the Trustee to conduct "reasonable due diligence in the circumstances of the case" and to "tak[e] into account a party's known or reasonably knowable affirmative defenses."

2. The federal fraudulent transfer claim (Count II) fails because the debtor received equivalent value for the challenged payments. The challenged payments were all interest

---

[1] *See Burtch v. Argosy Investment Partners V, L.P. et al.*, 19-50769; *Burtch v. Plexus Fund III, L.P. et al.*, 19-50771; *Burtch v. Strategic Partners, Inc*., 19-50413; *Burtch v. InterDirect U.S.A., Ltd.*, 19-50414; *Burtch v. Explore Consulting, LLC et al*., 19-50415; *Burtch v. Pike*, 19-50766; *Burtch v. Balthrope*, 19-50767; *Burtch v. Van der Wiel*, 19-50768*; Burtch v. Executive Apparel, Inc.*, 19-51170; *Burtch v. FedEx Corp. et al.*, 19-51171; *Burtch v. TrimFit, Inc.*, 19-51172; *Burtch v. Sarpa*, 19-51173; *Burtch v. Porter*, 19-51174.

payments on a loan for which the debtor was responsible as guarantor; the payments served to reduce the debtor's obligations and therefore the debtor received equivalent value.

3.  The state law insider preference and fraudulent transfer claims (Counts III-V, VIII) fail for the same reasons as the federal claims, and for the additional reason that the Trustee has not identified a predicate creditor who could assert the claims.

4.  The recharacterization claim (Count VI) fails because the challenged notes, which are in the same form as other notes previously issued by the debtor and include fixed interest and repayment obligations, were *bona fide* loans to the debtor from an existing lender.

## STATEMENT OF FACTS

Salem is an investor based in Greensboro, North Carolina. (Am. Compl. [Dkt. 3] ¶¶ 17-18.) In June 2015, Salem and two other investors (Plexus and Argosy) collectively invested $21.3 million in connection with the purchase of Parker School Uniforms, LLC ("Parker"). (*Id*. ¶¶ 21, 25, 32, 286-88.) The purchase was made by a newly-formed holding company, PSU Holdings, LLC. (*Id*. ¶ 19.)

Salem provided $8,080,000 of the total investment. (Am. Compl. [Dkt. 3] ¶¶ 25, 32.) Of that amount, $2,080,000 was an equity investment by Salem in PSU Holdings. (*Id*. ¶ 32.) The remaining $6 million was a loan by Salem to PSU Holdings. (*Id*. ¶ 25 & Ex. R.) The note provided for monthly interest payments to Salem, with the principal amount and any accrued interest due in June 2020. (*Id*. Ex. R §§ 2.2, 2.4.) The notes were subordinated to senior debt held by Frost Bank. (*Id*. ¶ 28 & Ex. F § 2.1.)

The notes were guaranteed by Parker. (*Id*. ¶ 27; Subsidiary Guaranty Agreement [Faris Decl. Ex. A][2] § 1.) At the same time Parker issued its guaranty, PSU Holdings repaid over $2.5

---

[2] References to "Faris Decl." are to the Declaration of David Faris, filed separately in support of this motion. The exhibits to the declaration are all referenced and relied upon in the Amended

2

million of debt owed by Parker to Frost Bank (described in the purchase agreement as the "Closing Indebtedness") and issued its own guaranty to Frost Bank for Parker's obligations under a $20 million line of credit. (*Id.* ¶¶ 40-41, 46, 287; Guaranty Agreement [Faris Decl. Ex. B]; Membership Interest Purchase Agreement [Faris Decl. Ex. C], § 2.02; Funds Flow Memorandum [Faris Decl. Ex. D].)

Salem did not have direct control over Parker's business. Parker was controlled entirely by PSU Holdings. (Am. Compl. [Dkt. 3] ¶ 37; Parker School Uniforms Limited Liability Company Agreement [Faris Decl. Ex. E], § 6.1.) PSU Holdings, in turn, was controlled by a board of managers. (Am. Compl. [Dkt. 3] Ex. D § 4.1.) Salem was entitled to appoint two of the five members of PSU Holdings' board of managers. (*Id.* ¶ 34.) The two Salem entities collectively owned 24.44 percent of the equity of PSU Holdings at the time of the June 2015 purchase of Parker (21.91% by Salem LP and 2.53% by Salem Holdings), and by the end of 2016 their ownership had dropped to 23.48 percent (20.34% and 3.14%, respectively). (*Id.* ¶¶ 32, 90.)

Parker made monthly interest payments to Salem from August 2015 through August 2017, generally in amounts between $55,000 and $58,000. (*Id.* Ex. A.) These interest payments were made pursuant to the terms of the subordinated note. (*Id.* ¶ 177.) Salem had a legal right to these interest payments. (*Id.* ¶ 186.) Each interest payment reduced the debt owed by Parker. (*Id.* ¶ 187.) These interest payments were the only conveyances made by Parker to Salem. (*Id.* Ex. A.) All told, Parker is alleged to have paid $1,430,933.27 to Salem, which was considerably less than the $8 million Salem invested. (*Id.* Ex. A.)

---

Complaint and therefore may be considered by the Court in deciding Salem's motion to dismiss. *See Adkins v. Rumsfeld*, 389 F. Supp. 2d 579, 584 (D. Del. 2005).

In November 2017, Salem loaned an additional $523,482 to Parker in the form of subordinated notes issued by PSU Holdings. Specifically, Salem LP loaned $123,482 on November 8, 2017 and $400,000 on November 17, 2017. (*Id*. ¶ 85; PSU Holdings, LLC, 12.5% Subordinated Term Notes [Faris Decl. Ex. F & G].) The structure of the notes documenting these loans was largely identical to the notes previously issued by Salem. (*Compare* Am. Compl. [Dkt. 3] Ex. R, V, W.) No payments were ever made on these notes. (*Id*. Ex. A.)

In January 2018, Parker filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (*Id*. ¶ 9.) No payments were made by Parker to Salem within the 90 days prior to the petition date. (*Id*. ¶ 13 & Ex. A.) Jeoffrey L. Burtch was appointed as the Trustee for Parker's bankruptcy estate. (*Id*. ¶ 10.)

Nearly two years after the bankruptcy filing, the Trustee brought this adversary proceeding against Salem. The Trustee claims that the interest payments to Salem constitute preferential transfers and/or constructively fraudulent transfers under federal law. (Am. Compl. [Dkt. 3] ¶¶ 181-208.) The Trustee also asserts state law claims pursuant to 11 U.S.C. § 544(b), likewise alleging that the interest payments to Salem constitute preferential transfers and/or constructively fraudulent transfers, as well as seeking to set aside the guaranty pursuant to which Parker made those interest payments. (Am. Compl. [Dkt. 3] ¶¶ 209-255, 283-298.) The Trustee also seeks to recharacterize the November 2017 notes as equity. (Am. Compl. [Dkt. 3] ¶¶ 260-282.)

## STANDARD OF REVIEW

Salem moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this case by Rule 7012 of the Federal Rules of Bankruptcy Procedure. As this Court has previously explained:

> With the Supreme Court's decisions in *Bell Atlantic Corp v. Twombly* and *Ashcroft v. Iqbal*, "pleading standards have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility

of relief to survive a motion to dismiss." As a threshold matter, therefore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'" Given this heightened standard, it is insufficient to simply provide "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. . . ." Thus, a complaint "must contain either direct or indirect allegations respecting all the material elements necessary to sustain recovery under some *viable* legal theory."

*In re LMI Legacy Holdings, Inc.*, No. 13-12098, 2017 WL 1508606, at *3 (Bankr. D. Del. Apr. 27, 2017) (citations omitted).

## ARGUMENT

I. **The federal preference claim (Count I) should be dismissed because the complaint does not take into account Salem's obvious new value defense.**

Count I of the Amended Complaint asserts preference claims under 11 U.S.C. § 547(b), seeking to recover approximately $399,000 from Salem in debt service payments from Parker that occurred between January and August 2017. (Am. Compl. [Dkt. 3] ¶ 174, Ex. A.). Yet the Amended Complaint also alleges that Salem provided more than $523,000 to Parker "via 'subordinated note'" in November 2017—months after the final payment from Parker to Salem. (Am. Compl. [Dkt. 3] ¶ 85).

Salem recognizes that, generally speaking, this Court has typically deferred ruling on new value defenses asserted at the Motion to Dismiss stage. *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 570-571 (Bankr. D. Del. 2012). But the Court is empowered to consider and dismiss "a complaint … when an affirmative defense … appears on its face." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.").

5

Moreover, § 547(b) of the Bankruptcy Code was amended in 2019 to require that plaintiffs conduct reasonable diligence and take into account known and reasonably knowable defenses before filing suit.  Small Business Reorganization Act of 2019 (SBRA), Pub. L. No. 116-54, § 3 (2019).  That amendment is now effective.

Specifically, as amended, § 547(b) permits the Trustee to avoid certain transfers "based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under [11 U.S.C. § 547(c)]."  11 U.S.C. § 547(b) (2020).  Section 547(c)(4), in turn, sets out the well-known "new value" defense in federal preference claims that applies to a creditor when, after challenged transfers, "such creditor gave new value to or for the benefit of the debtor—(A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor."  11 U.S.C. § 547(c).

The Trustee's obligation to consider the creditor's statutory defenses was intended to apply at the motion to dismiss stage.  As explained in the House Judiciary Committee Report, the bill "specifies an additional criterion that a trustee must consider ***before commencing an action to recover a preferential transfer***."  House Judiciary Committee, Report 116-171 at 4 (2019) (emphasis added).[3]

---

[3] The SBRA arose out of the American Bankruptcy Institute's Commission to Study the Reform of Chapter 11, Final Report and Recommendations (2014).  That report specifically recommended the changes to § 547(b) in nearly identical language, explaining that "[t]he Trustee should be precluded from issuing a demand letter to, or filing a complaint against, any party for an alleged claim under section 547 unless, based on reasonable due diligence, the trustee believes in good faith that a plausible claim for relief exists against such party under section 547, taking into account the party's known or reasonably knowable affirmative defense under section 547(c)."  *Id.* at 148.  The report further explained that "the potential abuses under section 547 are addressed most effectively through the changes in … ***pleading requirements***, and demand requirements described in these principles, and continued judicial oversight in accordance with the Bankruptcy Code."  *Id.* at 148 (emphasis added).

6

In short, the Trustee's Amended Complaint alleges that Salem received nearly $400,000 in interest payments in the first half of 2017, after which Salem provided Parker with an additional $523,000. The Trustee cannot, and the Amended Complaint does not, allege facts sufficient to show that the Trustee conducted reasonable diligence in the circumstances of the case or that the Trustee took into account Salem's obvious—and, therefore, "reasonably knowable"—new value defense. But that is what the law now requires. 11 U.S.C. § 547(b) (2020). Particularly where the new value defense is obvious on the face of the complaint, as it is here, the Trustee cannot ignore it.

Salem recognizes that, at the time the Amended Complaint was filed on January 15, 2020, the SBRA amendment to § 547(b) had not yet taken effect. The new law took effect on February 19, 2020 and applies now. *See* SBRA § 5. First, the time for Salem to file its motion to dismiss has not yet expired, so the statute need not be applied retroactively. Rather, the law as amended simply applies now, before any answer or substantive motion has been filed. *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711 (1974) ("We anchor our holding in this case on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.").

Second, even if the Court determines that applying the amended version of § 547(b) to the Trustee constitutes a retroactive application of the statute, it should still apply. Statutes "may be applied retroactively when the change … is merely remedial in nature or relates only to modes of procedure which neither create nor impair any substantive rights." *In re Gailey, Inc.*, 119 B.R. 504, 510 (Bankr. W.D. Pa. 1990) (citing *French v. Grove Mfg. Co.*, 656 F.2d 295, 298 (8th Cir. 1981)) (applying amendment to § 547(b) retroactively); *see also Guzman v. Attorney General*, 770

F.3d 1077, 1083-1084 (3d Cir. 2014). The change to § 547(b) here is procedural: it neither impairs any right of the Trustee under the prior version, nor does it grant any substantive right to creditors. *Id.* Rather, it simply creates additional pleading requirements for the Trustee designed to ensure that creditors are not required to expend substantial sums of money to answer obviously flawed preference claims.

The current version of § 547(b) applies to this matter, and the Trustee has not sufficiently pled "reasonable due diligence in the circumstances of the case" or, most importantly, that he "t[ook] into account [Salem]'s known or reasonably knowable" new value defense. Count I of the Amended Complaint should therefore be dismissed.

**II.    The federal fraudulent transfer claim (Count II) should be dismissed because Parker received reasonably equivalent value in the form of debt reduction.**

Count II of the Amended Complaint seeks avoidance of alleged constructive fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B). Among other things, a claim for a constructive fraudulent transfer requires that the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. § 548(a)(1)(b)(i). Although the Amended Complaint makes conclusory assertions that Parker "received less than reasonably equivalent value" (Am. Compl. [Dkt. 3] ¶¶ 202, 215, 231, 238), it does not plead any facts to support this conclusion. To the contrary, the Amended Complaint acknowledges that the payments at issue were made in satisfaction of a debt. The debtor (Parker) therefore received reasonably equivalent value.

"A debtor that makes a payment on an obligation that it has guaranteed receives an economic benefit that is reasonably equivalent in value." *In re Agriprocessors, Inc.*, 490 B.R. 374, 383 n.1 (Bankr. N.D. Iowa 2013); *accord* 11 U.S.C. § 548(d)(2)(A); *In re Direct Response Media, Inc.*, 466 B.R. 626, 660 (Bankr. D. Del. 2012) ("A transfer made in satisfaction of an antecedent

8

debt or for an obligation for which the debtor was liable presumptively constitutes reasonably equivalent value."); *In re Martin*, 205 B.R. 646, 648 (Bankr. M.D. Ala. 1993). All of the payments challenged by the Trustee were interest payments made by Parker to Salem. (Am. Compl. [Dkt. 3] Ex. A.) These interest payments were made pursuant to Parker's guarantee obligation on the $6 million Salem had provided through the subordinated note.[4] (*Id*. ¶¶ 27, 177, 290-91.) Salem had a right to the interest payments, and each interest payment reduced the debt owed by Parker. (*Id*. ¶¶ 186-187.)

Because Parker received reasonably equivalent value for the challenged payments, Count II of the Amended Complaint should be dismissed. *See*, *e.g*., *In re Direct Response Media, Inc.*, 466 B.R. at 660 (dismissing fraudulent transfer claim where debtor was jointly and severally obligated on debt and challenged payments were applied to reduce that debt); *Image Masters, Inc. v. Chase Home Finance*, 489 B.R. 375, 389-90 (E.D. Pa. 2013) (affirming dismissal of fraudulent transfer claim where debtor was contractually obligated to make payments on third-party debt and challenged payments were applied to that debt).

**III.    The state law claims (Counts III-V and VIII) should be dismissed for the same reasons as the federal law claims, and because the Trustee has not identified an actual creditor holding an unsecured claim who could have avoided the transactions.**

Counts III-V and VIII of the Amended Complaint assert state law preference and fraudulent conveyance claims pursuant to 11 U.S.C. § 544(b). These claims fail for the same reasons set forth above, and for the additional reason that the Trustee has failed to identify a creditor on whose behalf he can assert the claims.

---

[4] The underlying guaranty pursuant to which Parker made the interest payments was issued by Parker over 2½ years before the filing of the bankruptcy petition and therefore cannot be attacked under Section 548. *See* 11 U.S.C. § 548(a)(1); *In re APF Co*., 308 B.R. 183, 187 (Bankr. D. Del. 2004).

9

As a threshold matter, the Trustee has not pled the existence of an unsecured creditor to support his Section 544 claims. As this Court has explained:

> This strong-arm provision permits a trustee or debtor-in-possession to step into the shoes of a debtor's unsecured creditor holding a state law avoidance claim and pursue such claim "on behalf of the bankruptcy estate . . . for the benefit of the creditors." ***If there exists no such creditor, a trustee or debtor-in-possession may not act under section 544(b)(1).***

*In re LSC Wind Down LLC*, 610 B.R. 779, 784 (Bankr. D. Del. 2020) (emphasis added). "In order to prevail under 11 U.S.C. § 544(b), one must establish first that, at the time the transaction at issue occurred, there was in fact a creditor in existence who was holding an allowed unsecured claim, and second, that the transaction could have been avoided by such creditor under applicable state law." *In re Tyrit Enterprises*, 121 B.R. 217, 222 (Bankr. S.D. Tex. 1990); *accord Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir. 1996).

The Amended Complaint does not identify any such unsecured creditor. Rather, the Amended Complaint contains only a conclusory allegation that Parker "has creditors whose claims arose before" the transfers were made, and that those unidentified creditors were harmed by the transfers. (Am. Compl. [Dkt. 3] ¶¶ 222, 223, 235, 236, 252, 253.) This is insufficient to state a claim:

> It is not to be taken on a trustee's bare assertion that a predicate creditor is out there somewhere. As the defense points out, this is not just an abstract concern. Specific, fact-based avenues of defense turn on the identity of the predicate creditor and the nature of its past dealings with the relevant debtor.

*In re Petters Co., Inc.*, 495 B.R. 887, 899-900 (Bankr. D. Minn. 2013) (granting motion to dismiss Section 544(b) claim). Indeed, the Amended Complaint does not even identify the state law under which such a claim would proceed, instead pleading Delaware, Texas, and North Carolina law all in the alternative. *See* Am. Compl. [Dkt. 3] ¶ 1; *cf. In re Global Telecom Corp.*, 327 B.R. 711,

10

718 (Bankr. D. Del. 2005) (dismissing complaint that "attempts to allege a state law fraudulent conveyance action without identifying the applicable state law").

Furthermore, the state law claims in the Amended Complaint are largely duplicative of the federal law claims, and therefore are subject to dismissal for the reasons previously discussed. The state law fraudulent conveyance claims (Counts III and IV) parallel the federal claims in requiring the Trustee to show that Parker did not receive reasonably equivalent value for the transfers at issue. *See* 6 Del. C. §§ 1304(a)(2), 1305(a); N.C. Gen. Stat. §§ 39-23.4(a)(2), 39-23.5(a); Tex. Bus. & Com. §§ 24.005(a)(2), 24.006(a). As with the federal law claims, because the transfers were all interest payments on a debt, adequate value was received by Parker and thus the state law fraudulent conveyance claims fail.

Counts III-V and VIII of the Amended Complaint should therefore be dismissed.

**IV.    The recharacterization claim (Count VII) should be dismissed because the Trustee has not alleged facts showing that the challenged notes were anything other than *bona fide* loans from an existing lender.**

Count VII of the Amended Complaint asks the Court to recharacterize the notes issued to Salem in November 2017 from debt to equity. "Recharacterization of debt as equity is a recognized but challenging cause of action." *In re Optim Energy, LLC*, No. 14-10262, 2014 WL 1924908, at *7 (Bankr. D. Del. May 13, 2014), *aff'd*, 527 B.R. 169 (D. Del. 2015). By its nature such a claim requires "relatively more factual detail" to meet the pleading standards set forth in *Twombly* and *Iqbal*. *Id*. at *7 n.9 (internal quotation marks omitted). Although courts often apply multi-factor tests to a recharacterization claim, these tests "devolve to an overarching inquiry: the characterization as debt or equity is a court's attempt to discern whether the parties called an instrument one thing when in fact they intended it as something else." *In re SubMicron Sys. Corp.*, 432 F.3d 448, 456 (3d Cir. 2006). The Trustee has not pled facts sufficient to show that the November 2017 loans by Salem were secretly intended to be an equity investment.

11

In support of his claim for recharacterization, the Trustee asserts that the "Nov. 2017 Funding was advanced substantially in proportion to the amounts of equity invested by each of Plexus, Argosy, and Salem." (Am. Compl. [Dkt. 3] ¶ 266.) But this assertion is contradicted by the factual allegations in the Amended Complaint. The Amended Complaint alleges that in the "Nov. 2017 Funding," Argosy funded $277,834, Salem funded $523,482, and Plexus funded $61,742, for a total of $863,058. (*Id.* ¶¶ 84-86, 264.) The Amended Complaint further alleges that Salem held 23.48% of Parker's equity, Argosy held 52.83%, Plexus held 11.74%, and individual investors held the remainder. (*Id.* ¶ 90.) Thus, the comparison of the percentage of funds loaned to the percentage of equity held is as follows:

|  | Nov. 2017 Funding | % of total funding | Equity ownership |
|---|---|---|---|
| **Argosy** | $277,834 | 32.19% | 52.83% |
| **Salem** | $523,482 | 60.65% | 23.48% |
| **Plexus** | $61,742 | 7.15% | 11.74% |
| **Individuals** | $0 | 0% | 11.96% |

As this chart shows, there was no correlation between the amount loaned and the percentage of equity ownership. To the contrary, Salem was by far the largest contributor to the Nov. 2017 Funding, yet owned less than half as much equity as Argosy. "[A] sharply disproportionate ratio between a stockholder's percentage interest in stock and debt is indicative of bona fide debt." *In re Friedman's Inc.*, 452 B.R. 512, 522 (Bankr. D. Del. 2011) (*quoting In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 751 (6th Cir. 2001)); *accord In re Our Alchemy, LLC*, No. 16-11596, 2019 WL 4447535, at *8 (Bankr. D. Del. Sept. 16, 2019).

The Trustee further alleges that "[u]pon information and belief, Parker and Defendants failed to comply with the formalities of a loan between lender [sic] and a creditor." This allegation is defeated by the notes themselves. (Faris Decl. Ex. F & G.) The form of the November 2017

notes is nearly identical to the notes issued to Salem in connection with its prior loans. (*Compare id. with* Am. Compl. [Dkt. 3] Ex. R, V, W.) The November 2017 notes, like the previously issued notes, are titled "Subordinated Term Note." The November 2017 notes, like the previously issued notes, have a fixed interest rate of 12.5%. The November 2017 notes, like the previously issued notes, have a fixed repayment date (June 25, 2020). The substantive provisions of the November 2017 notes (*see* § 1 through § 6.4) largely mirror the provisions in the previously issued notes. Indeed, the only substantive difference is that unlike prior loans, the November 2017 notes defer all interest payments to the maturity date, but this difference standing alone is insufficient to convert a debt transaction to equity. *See In re HH Liquidation, LLC*, 590 B.R. 211, 293 (Bankr. D. Del. 2018).

The remainder of the Trustee's allegations are all to the effect that Parker was in financial distress at the time the November 2017 notes were issued. The Trustee alleges that Parker was insolvent, undercapitalized, unable to obtain alternative financing, and that no prudent lender would extend additional credit to Parker under these circumstances. (Am. Compl. [Dkt. 3] ¶¶ 267-276.) As numerous decisions have recognized, however, these factors carry little weight in the context of subsequent loans by a pre-existing lender. "'[W]hen existing lenders make loans to a distressed company, they are trying to protect their existing loans and traditional factors that lenders consider (such as capitalization, solvency, collateral, ability to pay cash interest and debt capacity ratios) do not apply as they would when lending to a financially healthy company.'" *In re SubMicron Sys. Corp.*, 432 F.3d at 457 (*quoting In re SubMicron Sys. Corp.*, 291 B.R. 314, 325 (D. Del. 2003)); *accord In re Moll Indus., Inc.*, 454 B.R. 574, 583 (Bankr. D. Del. 2011) ("In the case of a pre-existing lender, it is legitimate for the lender to take actions to protect its existing loans, including extending additional credit or granting forbearance.").

Thus, for example, the Trustee's allegations that Parker could not have obtained alternative financing is insufficient to get the Amended Complaint past a motion to dismiss. (Am. Compl. [Dkt. 3] ¶¶ 275, 276, 281.) "Existing lenders are often the only source of funding when a debtor faces distress. Therefore, inability to obtain alternative financing is insufficient to support recharacterization." *In re Moll Indus., Inc.*, 454 B.R. at 584 (granting motion to dismiss); *accord In re Optim Energy, LLC*, 2014 WL 1924908, at *9.

The Trustee's allegations of undercapitalization are likewise insufficient. "[T]he fact that a party lends to an inadequately capitalized company does not necessarily imply that it intends to infuse the company with capital; instead, it may have a pre-existing interest in the borrower that it is trying to protect." *In re Optim Energy, LLC*, 527 B.R. 169, 174 (D. Del. 2015) (affirming grant of motion to dismiss). Furthermore, "[c]ourts should not put too much emphasis on this factor, in any event, because all companies in bankruptcy are in some sense undercapitalized." *In re Optim Energy, LLC*, 2014 WL 1924908, at *7 (internal quotation marks omitted).

In short, rather than indicating a disguised equity investment, the obvious alternative explanation for the facts alleged by the Trustee is that in making the November 2017 loans, Salem was making a *bona fide* effort to protect its pre-existing investment. The Amended Complaint thus fails to satisfy the pleading standards set forth in *Iqbal* and *Twombly*. *See George v. Rehiel*, 738 F.3d 562, 586 (3d Cir. 2013) (explaining that where the court may infer from the factual allegations in the complaint obvious alternative explanations that are lawful, the complaint is subject to dismissal under *Iqbal* and *Twombly*); *Santiago v. Warminster Twp.*, 629 F.3d 121, 133 (3d Cir. 2010) (same); *see also In re USDigital, Inc.*, 443 B.R. 22, 52 (Bankr. D. Del. 2011) (dismissing recharacterization claim where "the Trustee fails to allege adequate facts to support a claim for recharacterization under the plausibility standard of *Iqbal*").

14

Furthermore, as a policy matter, additional loans by existing lenders to troubled companies are to be encouraged. As this Court has explained:

> Courts have frequently worried that an overly aggressive recharacterization regime could deter good-faith rescue financing for struggling companies. . . . An overly aggressive recharacterization regime could eliminate efficient, good-faith rescue financing to the detriment of creditors.

*In re HH Liquidation, LLC*, 590 B.R. at 297; *accord In re Our Alchemy, LLC*, 2019 WL 4447535, at *10 ("[R]echaracterization should not be used to discourage good-faith loans.") (internal quotation marks omitted). Count VII should therefore be dismissed.

## V.     The remaining claims (Counts VI and IX) are not independent causes of action.

Count VI of the Amended Complaint seeks recovery of avoided transfers pursuant to 11 U.S.C. § 550 and similar state laws. Count IX of the Amended Complaint seeks disallowance of claims pursuant to 11 U.S.C. § 502(d), which provides for disallowance of the claims of any entity that has received an avoidable transfer. For the reasons set forth above, there were no transfers to Salem that are subject to avoidance, and therefore these claims should be dismissed. *See In re Raytrans Holding, Inc.*, 573 B.R. 121, 132 (Bankr. D. Del. 2017).

## CONCLUSION

The Trustee has had over two years to investigate potential claims, and has amended his complaint once already, and is still unable to state a claim for relief against Salem. The Amended Complaint should be dismissed with prejudice.

Dated: June 1, 2020
     Wilmington, Delaware

**THE ROSNER LAW GROUP LLC**

By: */s/ Jason A. Gibson*
Frederick B. Rosner (DE 3995)
Jason A. Gibson (DE 6091)
Zhao (Ruby) Liu (DE 6436)
824 N. Market Street, Suite 810
Wilmington, Delaware 19801
Tel: (302) 777-1111
Email: rosner@teamrosner.com
       gibson@teamrosner.com
       liu@teamrosner.com

-and-

**BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP**

Jeffrey E. Oleynik, Esq.
2000 Renaissance Plaza,
230 North Elm Street
Greensboro, NC 27401
Tel: (336) 271-3182
Email: joleynik@brookspierce.com

*Attorneys for Defendants Salem Investment Partners, III, L.P. and SIP III Holdings, Inc.*